Yahya AL–OMARI, Appellant,

v.

The STATE of Texas, Appellee.

Farid Addin ATTAR, Appellant,

v.

The STATE of Texas, Appellee.

Mehran EBRAHIMI, Appellant,

v.

The STATE of Texas, Appellee.

Masoud Reza ESMAILBAG, Appellant,

v.

The STATE of Texas, Appellee.

Abbas JAMAL, Appellant,

v.

The STATE of Texas, Appellee.

Rama YAGHI, Appellant,

v.

The STATE of Texas, Appellee.

Samir ZAKI, Appellant,

v.

The STATE of Texas, Appellee.

Alireza JAFARZADEH, Appellant,

v.

The STATE of Texas, Appellee.

Majid KAMALIPOUR, Appellant,

v.

The STATE of Texas, Appellee.

Fereidoon KHERADMAN, Appellant,

v.

The STATE of Texas, Appellee.

Farajolah SHARAFIAN, Appellant,

v.

The STATE of Texas, Appellee.

Lana BUDEIRI, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 09–83–065–CR to 09–83–076–CR.

Court of Appeals of Texas,
Beaumont.

Nov. 23, 1983.

Discretionary Review Refused
May 2, 1984.

894

William P. Allison, Austin, for appellant.

Margaret Moore, County Atty., Austin, for appellee.

## OPINION

BROOKSHIRE, Justice.

The offense was Disrupting a Public Meeting or Procession.[1] Appellants[2] were tried together before the court, found guilty, and punishment was assessed at a two hundred dollar ($200.00) fine each and eight days in jail for ten of the Defendants and four days in jail for two Defendants.[3] Their attorney moved the appellate court to consolidate all issues for appeal concerning each Defendant into one brief and such motion was granted.[4]

Appellants were among approximately twenty-five (25) persons arrested and led out of a speech given by Journalist Fereydoun Hoveyda concerning political events in Iran. The speech was given on January 31, 1980, during a week-long student organized symposium, called "Middle East: Insights" held at the Texas Union Ballroom at the University of Texas, Austin. Lengthy testimony by a number of witnesses identified each of the Appellants as persons standing, shouting and shaking their fists at the speaker. A number of the witnesses termed Appellants' behavior, fairly we believe, as "disruptive". The speaker was stopped many times during his presentation by vocal outbursts. Witnesses who were members of the audience said they could not hear what the speaker was saying due to the commotion. One of the student organizers of the program testified she was on the stage during the speech and could see that the speaker skimmed over or rushed through portions of his prepared manuscript and even was unable to finish. Persons in the audience who were not participating in the demonstration reportedly were exclaiming to those making the outbursts, "sh-sh-sh, be quiet". The outbursts were exceptionally rude in light of the fact that a microphone had been placed on the floor and before the beginning of the speech it was announced that the microphone would be used after the speech for questions and answers from the floor. After two (2) pleas for quiet by a student organizer and one (1) warning given by a member of the U.T. Dean of Students Office stating such disruptive behavior was against the law and university regulation, University Police made arrests and those arrested were led out of the assembly one by one without great incident.

In Ground of Error One Appellants contend that *Article 42.05* is overbroad and therefore violates the First Amendment to the United States Constitution and *TEX. CONST. art. I, Sec. 8* (1876, amended 1955). In Ground of Error Two Appellants assert that the statute is vague and there violates the Fourteenth Amendment to the United States Constitution and *TEX. CONST. art. 1, Sec. 19* (1876, amended 1955).

Before reaching Appellants' contentions, we note that our reading of the voluminous record discloses no first amendment challenge in the pleadings or in the proceedings in the lower court, and no adverse ruling by the trial judge, although the issue seems to have been touched upon briefly, generally and by colloquy in hearings on "Defendants' Motion to Set Aside the Information based upon Discriminatory Selective Enforcement and Prosecution", which motion is not before us on appeal. As a consequence, nothing is presented for review. *Thompson v. State*, 537 S.W.2d 732, at 735 (Tex.Crim.App.1976); *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); *Adler v. Board of Education*, 342 U.S. 485, 72 S.Ct. 380; 96 L.Ed. 517 (1952). We also note,

---

1. TEX.PENAL CODE ANN. § 42.05 (Vernon 1974).

2. Appellants are Yahya Al-Omari; Farid Addin Attar; Mehran Ebrahimi; Masoud Reza Esmailbag; Abbas Jamal; Rama Yaghi; Samir Zaki; Alireza Jafarzadeh; Majid Kamalipour; Fereidoon Kheradman; Farajolah Sharafian; and Lana Budeiri.

3. Ms. Yaghi and Ms. Budeiri were the Defendants assessed four (4) days in jail.

4. The motion was filed on September 21, 1982, with the Third Court of Appeals, Austin, and was subsequently granted by that court. This appeal was transferred from the Austin court to this court on May 4, 1983.

alternatively, that nowhere do Appellants call our attention to any portion of the voluminous record or refer to any page number where the vagueness or overbreadth of the Texas statute was raised in the Court below and so for this reason also nothing is presented for review. *Cook v. State*, 611 S.W.2d 83 (Tex.Crim.App.1981) ("This court with its tremendous case load should not be expected to leaf through a voluminous record hoping to find a matter raised by appellant", at 87). *See also TEX. CODE CRIM.PROC.ANN. Sec. 40.09(9)* (Vernon Supp.1982–1983).

Further, the State has pointed out that Appellants have asserted the statute in question is unconstitutional on its face but have not urged it is unconstitutional as applied to them. Appellants therefore, the State contends, have no standing to question the constitutionality of *Article 42.05* because in Appellants' brief only the rights of imaginary third-persons, not before the court, are hypothetically asserted.[5, 6] We agree with the State.

The general rule is that one to whom a statute may constitutionally apply may not challenge a statute on grounds that it may conceivably be applied to others. Also, constitutional rights are personal and may not be asserted vicariously. *See 16–A AM.JR.2d, Constitutional Law, Sec. 461, at 249* (1979). An exception has been recognized, however, in the area of the First Amendment to allow one to raise constitutional overbreath and/or vagueness as applied to others in situations not before the court. *See Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The exception is justified by the importance of maintaining a free and open market for the exchange of ideas. The exception, however, will not be applied if the statute's deterrent effect on legitimate expression is not "both real and substantial", and if the statute is "readily subject to a narrowing construction by the state courts." *Young v. American Mini Theatres,* 427 U.S. 50, at 60, 96 S.Ct. 2440, at 2447, 49 L.Ed.2d 310, at 320. The threshold test, we hold, has not been met in the case at hand.

It is clear that the statute, *Art. 42.05* does not have a deterrent effect on legitimate expression that is "both real and substantial". This is because the statute requires a specific criminal intent; to-wit: "With intent to prevent or disrupt a lawful meeting, procession, or gathering".[7] Clearly, by the inclusion of the specific criminal intent the legislature limited the statute to areas that are strictly criminal and constitutionally within the legislature's prerogative to legislate. We also do not believe any of the hypothetical examples given by Appellants in their brief, when considered in light of the specific criminal intent required by the statute, could be considered by any stretch of the imagination as of-

---

5. We quote from Appellants' brief concerning Ground of Error One: "The speaker may be rude to another or to the group and may be rude intentionally.... The citizen's 'verbal utterance' could be complicated and hard-hitting in its choice of words, or it could be as simple as an 'amen' spoken in the wrong place at the wrong time. Many gatherings have been intentionally disrupted by laughter, or by the slip of a tongue that elicits the laughter or the sob.... It could be a stage whisper. This crime could be committed by the kindliest of souls who is genuinely concerned about rising crime in his or her neighborhood and repeatedly makes a point at some 'gathering.' The criminal could likewise be a Nazi or a Klansman expressing a very unpopular point of view at a parade...."

6. We quote from Appellants' brief concerning Ground of Error Two: "The present statute is rife with ambiguity. It is one problem to define and distinguish a 'meeting, procession, or gathering.' Where does one begin and the other end? Is a 'procession' necessarily a 'gathering' but not necessarily a 'meeting'? Is a 'gathering' never a 'procession' unless it moves from one place to another? How far does it have to move? Are two people together a 'gathering'? And in addition, what makes a 'gathering' a 'lawful gathering'? ..."

7. *TEX.PENAL CODE ANN. art. 42.05* reads in pertinent part:
    "(a) A person commits an offense if, with intent to prevent or disrupt a lawful meeting, procession, or gathering, he obstructs or interferes with the meeting, procession, or gathering by physical action or verbal utterance." ·

fenses under the statute.[8] Thus, Appellants' brief has even failed to adequately assert the rights of imaginary persons not before the court because Appellants have not affirmatively shown that such persons' actions fall within the statute. To have standing, an individual must present more than allegations of a subjective chill. There must be claim of specific present objective harm or a threat of specific future harm. The facts of this case, as well as the hypothetical examples given in Appellants' brief, do not illustrate any potential for sweeping or improper application. *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). Further, we note that in the three primary Supreme Court cases cited by Appellants,[9] the two that contained reversals of conviction happened to deal with statutes that did not require a specific criminal intention for conviction. On the other hand, the one case where conviction was affirmed, *Chaplinsky v. New Hampshire, supra,* the statute did require the specific criminal intent, "with intent to deride, offend or annoy".

■ Also, it has never been deemed an abridgement of freedom of speech to make a course of conduct illegal merely because the conduct was in part initiated, evidenced or carried out by means of language. *Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444; *see also Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584. In *Colten, supra,* the Court agreed with a state court's construction of a disorderly conduct statute which required a specific criminal intention for conviction. The lower court said that the specific criminal intent must be the *predominant* intent and that predominance can be determined either (1), from the fact that no bona fide intent to exercise a constitutional right appears to have existed, or (2), from the fact that the particular exercise of a constitutional right is insignif-

icant in comparison with the inconvenience, annoyance or alarm caused by the exercise. We agree and believe such is fairly appropriate to the Texas statute. Common sense dictates that a balancing test should be used in each case under the subject statute. "Individuals may not be convicted ... merely for expressing unpopular or annoying ideas. The statute comes into operation only when the individual's interest in expression, judged in light of all relevant factors, is 'miniscule' compared to a particular public interest in preventing that expression or conduct at that time or place." *Colten v. Kentucky, supra.* We have reviewed the subject statute's predecessors, *Articles 281 and 474,* Vernon's Ann.P.C. (repealed 1973), and note that the prior statutes did not require any specific criminal intention for conviction. We think it plain that by addition of the requirement of specific criminal intention for conviction the legislature was attempting to narrow the sweep of its criminal law to only areas it had a right to regulate. Our reading of the statute, against its historical backdrop, we believe, is *not* a "construction" or "rewriting" of the statute at all but merely a restatement of what the legislature has already done.

■ When a facial challenge is made to the overbreath and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreath challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, it should uphold the challenge only if the enactment is impermissibly vague in all of its applications. One who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A

---

8. Under the statute, an intentional, physical action or intentional verbal utterance which prevents or disrupts, but which the person did not criminally intend to prevent or disrupt, is *not* an offense.

9. *Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); *Terminiello v. Chicago,* 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949).

court should therefore examine the complainant's own conduct before analyzing other hypothetical applications of the law. *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, at 494, 102 S.Ct. 1186, at 1191, 71 L.Ed.2d 362, at 369. This we have done.

Appellants' facial challenge for vagueness fails because, under the highest standards appropriate to both criminal law and free speech and association, the statute is sufficiently clear as applied to Appellants. *Hoffman Estates v. Flipside, Hoffman Estates, supra.* Further, we believe that the specific criminal intent required by the statute makes it sufficiently clear so that persons of ordinary intelligence have reasonable opportunity to know what is prohibited and so that no discriminatory enforcement is likely to occur. *Colten v. Kentucky, supra.* The statute is captioned "Disrupting Meeting or Procession". It is not a censorial statute directed at particular groups or viewpoints. *See Broadrick v. Oklahoma, supra.* We can perceive of no chilling effect this statute may have on constitutional freedoms. Indeed, in the case at hand it served to protect the rights of the speaker, the listeners and those sponsoring the program. This, we feel, is exactly what this statute was meant to do and it served its purpose well in this case.

Grounds of Error Numbers One and Two are overruled.

In Ground of Error Three, Appellants contend the trial court erred in failing to grant the Appellants' motion to quash the informations. The reason given in the motion to quash was that the informations did not contain on the face of the charging instruments the "verbal utterances" Appellants were accused of making.[10] Witnesses recalled there was much shouting in a non-western language, presumably Persian, although one witness did recall one slogan "Death to the Shah" voiced in the audience

but not by any particular individual. It would be most difficult, if not impossible, for a charging instrument to contain the specific words in such an instance. Also, as noted above, under the statute conduct is actionable and *not* the specific words—such as "fighting words" or "seditious words". Ground of Error Number Three is overruled.

In Ground of Error Four it is alleged the trial court erred in not setting aside the informations because the informations alleged an offense under the wrong statute. Appellants contend that *TEX.EDUC.CODE ANN. Sec. 4.33* (Vernon 1972) controls the instant case. It is urged that the statutes in question are *in pari materia,* or upon the same subject, and therefore the more specific statute ought to control. *See Cuellar v. State*, 521 S.W.2d 277 (Tex.Crim.App.1979); *Jones v. State*, 552 S.W.2d 836 (Tex.Crim.App.1977). The principal, *in pari materia,* however, is applicable where necessary and it is not necessary here inasmuch as the statutes in question do not deal with the same subject. *Powell v. State*, 632 S.W.2d 842 (Tex.App. —Houston, 14th Dist.1982, no writ). The facts of the instant case clearly do not relate to *TEX.EDUC.CODE ANN. Sec. 4.33* (Vernon 1972) because that statute concerns those who "wilfully disrupt the conduct of classes or other school activities." A further reading of this statute states such has necessarily been limited to include "classroom instruction" and "activities which the students are required to attend." *TEX.EDUC.CODE ANN. Sec. 4.33(b)(3)(A–C)* (Vernon 1972). The record discloses that the assembly in question was patently not a school activity, not classroom instruction, and not an activity which the students of the University of Texas, Austin, were required to attend. Ground of Error Four is overruled.

10. Each of the informations in question alleged that an appellant "did then and there, with intent to disrupt a lawful gathering, namely: a speech by Fereydoun Hoveyda delivered as part of a symposium on 'Middle East: Insight's' [sic], intentionally and knowingly interfered with the said gathering by verbal utterances, namely by making loud verbal utterances during the course of the said speech, AGAINST THE PEACE AND DIGNITY OF THE STATE."

The Appellants do not challenge the sufficiency of the evidence. The meeting involved in these appeals was one of a series entitled "Middle East: Insights" During these symposia on the Middle East, a number of speakers had been scheduled with a wide range of opinions or viewpoints to be presented.

AFFIRMED.