**Robert Irving KINGSLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–86–01047–CR.**

Court of Appeals of Texas, Dallas.

Nov. 6, 1987.

**192**

Michael P. Gibson, Dallas, for appellant.

Kathi Alyce Drew, Dallas, for appellee.

Before DEVANY, McCLUNG and LAGARDE, JJ.

DEVANY, Justice.

Robert Irving Kingsley was tried before a jury and convicted of "purchase of a child." TEX.PENAL CODE ANN. § 25.06 (Vernon Supp.1987). Punishment was assessed at seven years' imprisonment and a $5,000 fine. Appellant's seven points of error may be summarized as follows: (1) section 25.06 of the penal code is unconstitutionally vague and overbroad; (2) the indictment should have been quashed; (3) the jury panel should have been quashed; and (4) unadjudicated extraneous offenses were improperly admitted during the punishment phase of the trial. For the reasons stated below, we set aside the judgment of conviction, and reverse and remand the cause for a new trial.

In the spring of 1984, Lynne Marie Breland went to appellant's law office to inquire about placing her unborn child for adoption. Appellant told her he was "certified" to do adoptions and that he knew a couple, Mr. and Mrs. Rosenfeld, that would adopt her child. During the remainder of her pregnancy, appellant gave Miss Breland numerous checks to pay for her rent, groceries, electricity, phone, gasoline, and miscellaneous items such as cigarettes and makeup. Appellant also paid several taxi fares and purchased maternity clothing for Miss Breland. After the child was born, he was adopted by the Rosenfelds.

TEX.PENAL CODE ANN. § 25.06 reads in pertinent part:

§ 25.06. Sale or Purchase of Child

(a) A person commits an offense if he:

(1) possesses a child or has the custody, conservatorship, or guardianship of a child whether or not he has actual possession of the child, and he offers to

accept, agrees to accept, or accepts a thing of value for the delivery of the child to another or for the possession of the child by another for purposes of adoption; or

(2) offers to give, agrees to give, or gives a thing of value to another for acquiring or maintaining the possession of a child for the purpose of adoption.

(b) It is an exception to the application of this section that the thing of value is:

(1) a fee paid to a child-placing agency as authorized by law;

(2) a fee paid to an attorney or physician for services rendered in the usual course of legal or medical practice; or

(3) a reimbursement of legal or medical expenses incurred by a person for the benefit of the child.

It is appellant's theory that section 25.06 is unconstitutionally vague because the term "legal or medical expenses," contained in the exception to the application of the offense, is not defined in the statute. Appellant also asserts that the statute is overbroad in that it criminalizes the act of assisting a mother in meeting her obligations under section 12.04(3) of the Texas Family Code.[1]

■ We hold that appellant's vagueness challenge is without merit because appellant's acts constitute the type of conduct which are prohibited under the statute and do not fall under the exception by an ordinary construction of the statutory term "legal or medical expenses." None of the payments to Miss Breland were to reimburse her for legal or medical expenses which she incurred. It is an essential element of the exception provided in section 25.06(b)(3) that the payment must be a reimbursement for legal and medical expenses incurred. A review of the record in this case reveals that some payments to Miss Breland were for taxi rides, maternity clothes, gasoline, electricity, rent, groceries, cigarettes, and cosmetics; such items are not "legal or medical expenses." Certainly, it would be incredulous to suggest, for example, that the phrase "legal or

medical expenses incurred by a person for the benefit of the child" would include payments for cosmetics or cigarettes for the pregnant mother. A person who engages in some conduct that is clearly proscribed by a statute cannot complain of the vagueness of the law as it might possibly be applied to other conduct of that person. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982); *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974). For these reasons, and with the clear record in this case, the vagueness contention as to the exception under the statute is without merit. *See Hoffman Estates*, 455 U.S. at 495, 102 S.Ct. at 1191; *Smith v. State*, 478 S.W.2d 518, 520–21 (Tex.Crim.App.1972); *Deeds v. State*, 474 S.W.2d 718, 722 (Tex. Crim.App.1971); *Smith v. Smith*, 720 S.W. 2d 586, 597–98 (Tex.App.—Houston [1st Dist.] 1986, no writ); *Al–Omari v. State*, 673 S.W.2d 892, 896–98 (Tex.App.—Beaumont 1983, pet. ref'd).

■ Appellant's overbreadth complaint reveals a misunderstanding of the statute. Contrary to appellant's assertion, the statute does not prohibit, nor was appellant convicted of, merely financially assisting a mother with providing her child with clothing, food, shelter, and medical care. The statute proscribes giving a thing of value to another for acquiring or maintaining the possession of a child *for the purpose of adoption.* Appellant gave money to Breland in exchange for possession of her child in order to place the child for adoption. It is precisely that activity that the statute was enacted to prevent and that appellant violated. While the *exception* in the statute may be overbroad in certain hypothetical situations, such as what actually constitutes a medical *expense*, appellant has no standing to assert the overbreadth doctrine where, as here, his conduct is within the core of proscribed conduct. *Umphlet v. Connick*, 815 F.2d 1061, 1066 (5th Cir. 1987); *Ferguson v. Estelle*, 718 F.2d 730,

---

1. TEX.FAM.CODE ANN. § 12.04(3) (Vernon 1986) provides, in pertinent part, that the parent

has the duty to provide a child with clothing, food, shelter and medical care.

735 (5th Cir.1983); *see also Smith,* 478 S.W.2d at 520; *Deeds,* 474 S.W.2d at 722.

■ Appellant next complains that the indictment should have been quashed because it did not specifically state in what respect the consideration given did not constitute medical or legal expenses. The indictment tracks the language of section 25.06 and alleges both the elements of the offense and negates the statutory exceptions. Except in rare instances, an indictment that tracks the words of the penal statute in question is legally sufficient and the State is not required to plead matters in its indictment which are essentially evidentiary. *Marrs v. State,* 647 S.W.2d 286, 289 (Tex.Crim.App.1983); *Nowell v. State,* 720 S.W.2d 859, 863 (Tex.App.—Texarkana 1986, pet. ref'd); *Pryor v. State,* 651 S.W.2d 22, 23 (Tex.App.—Dallas 1983, pet. ref'd). We hold that the indictment sets forth in plain and intelligible language sufficient information to enable the accused to prepare his defense and is, therefore, legally sufficient. *See Beck v. State,* 682 S.W.2d 550, 554 (Tex.Crim.App.1985).

■ Appellant further complains that the indictment alleges multiple means for commission of the offense or that it alleges more than one offense in a single paragraph in violation of article 21.24 of the Texas Code of Criminal Procedure.

TEX.CODE CRIM.PROC.ANN. art. 21.-24 (Vernon Pamphlet Supp.1987) provides:

Art. 21.24. Joinder of certain offenses

(a) Two or more offenses may be joined in a single indictment, information, or complaint, with each offense stated in a separate count, if the offenses arise out of the same criminal episode, as defined in Chapter 3 of the Penal Code.

(b) A count may contain as many separate paragraphs charging the same offense as necessary, but no paragraph may charge more than one offense.

(c) A count is sufficient if any one of its paragraphs is sufficient. An indictment, information, or complaint is sufficient if any one of its counts is sufficient.

The indictment reads, in pertinent part:

knowingly and intentionally, then and there offer to give, agree to give, and give a thing of value, to wit: current money of the United States of America, to LYNNE MARIE BRELAND, for acquiring and maintaining the possession of BABY BOY BRELAND, a child, for the purpose of adoption; and the thing of value was not a fee paid to a child-placing agency as authorized by law, and the thing of value was not a fee paid to an attorney or physician for services rendered in the usual course of legal and medical practice, and the thing of value was not a reimbursement of legal and medical expenses incurred by any person for the benefit of said child.

Because section 25.06(a) merely sets out different ways in which one offense can be committed, the State may charge the offense in the manner which was used in the indictment in this case. *See Bates v. State,* 587 S.W.2d 121, 129 (Tex.Crim.App.1979); *Sims v. State,* 735 S.W.2d 913 (Tex.App.—Dallas, 1987 pet. pending); *see generally Gahl v. State,* 721 S.W.2d 888, 893–96 (Tex. App.—Dallas 1986, pet. filed).

Appellant's last complaint against the indictment is that it is fundamentally defective if it fails to charge an offense. We hold the indictment complained of tracks the statute and alleges all the elements of the offense.

■ Appellant next urges that the jury panel should have been quashed because it had been "poisoned" by one of the prospective jurors. It was brought to the attention of the parties and the court that certain members of the jury panel may have talked about the case. The panel of 60 prospective jurors were then brought back into the courtroom and the court inquired if any of them had discussed the case with anyone and, if so, to raise their hands. Fourteen jurors acknowledged that they had discussed the case. Twelve of those fourteen jurors stated that they had discussed such matters as: (1) they had seen a portion of the jury panel on television; (2) when the trial would end; (3) how do lawyers pick jurors; (4) does religion play a part in picking jurors; and (5) how the law

would be applied. None of these discussions appear harmful without more being shown. One potential juror had told another potential juror that he believed the appellant was guilty. Both of these potential jurors were then excused from the panel. The fourteenth potential juror who raised his hand had also been approached by another member of the sixty-member panel who had expressed an opinion that appellant was guilty. This potential juror said he placed no credibility on that opinion and that it would not influence him. The potential juror who had expressed the opinion had already been excused. The final twelve persons who were actually empaneled as the jury said they had not discussed the case or *unequivocally stated that they would not be influenced by any conversations or statements that they may have heard.*

The trial then proceeded and, after guilt had been adjudicated, during the punishment phase, appellant requested that the jury be excused from the courtroom. Appellant then brought forward a member of the original panel of prospective jurors who had not been chosen as a juror. This person's name was Good, who told the court that he had talked to two of the members of the jury when they were all on the sixty-member panel together. He testified that he had told these jurors that, based on news reports he had seen, he had already formed an opinion and that, therefore, he probably would not be allowed to serve on the jury. Good stated that he did not say what that opinion was but he had personally assumed that they realized he believed appellant to be guilty. Neither of the jurors that Good referred to had admitted during voir dire to discussing the case. Appellant then re-urged his motion to quash the jury, which was denied. Appellant argues that the resulting jury panel was clearly "poisoned" by Good's remarks and that harm has been shown. Appellant makes the point that, because these jurors did not admit to these conversations when originally asked by the court, appellant did not receive a fair trial. Appellant timely requested a new trial because of the alleged improper conversation Good had with these persons before they became jurors.

TEX.CODE CRIM.PROC.ANN. art. 36.-22 (Vernon 1981) provides:

> No person shall be permitted to be with a jury while it is deliberating. No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court.

In *Chambliss v. State*, 647 S.W.2d 257, 265–66 (Tex.Crim.App.1983), the Court of Criminal Appeals stated:

> Although it is generally presumed that a defendant is injured whenever an empaneled juror converses with an unauthorized person about a case, the defendant has the burden to establish that if a conversation did occur between a nonsequestered juror and someone else ... the discussion involved matters concerning the specific case at trial.

"The law requires appellant to establish that the contents of any conversations between a non-sequestered juror and another concerned the case at trial and operated to prejudice his rights." *Starvaggi v. State*, 593 S.W.2d 323, 327 (Tex.Crim.App.1979). The first distinction we see is that the conversation Good had was with two persons of a sixty-member panel *before* they were selected as jurors. The twelve persons who were chosen as the jury, when being qualified, stated that they would not be influenced by any conversations they had heard. While the remarks by Good did concern the case at hand, those remarks were not made to *jurors*. When the process of jury selection continued, the final twelve persons selected made a commitment and both sides and the court were satisfied as to their qualifications. Had the remarks by Good been made to the jury, we would have an entirely different situation.

Moreover, there is no evidence that the remarks by Good were understood by potential jurors. Therefore, there is no evidence that anyone was prejudiced by the remarks. Furthermore, the twelve persons who were selected stated that they would not be influenced by any remarks they

might have heard. It is one thing to speak to members of a jury, but quite another thing to speak to persons who are not on a jury. If Good had made the same remarks outside the courthouse, it would appear clearer that anyone who heard those particular remarks and later became a juror on the case would not necessarily be disqualified to serve. When the jurors state that they will not be influenced by anything that they may have heard about the case, they become clothed with a select status which may not thereafter be "poisoned." It is these nonsequestered jurors who have made the commitment who are then protected from any remarks about the case that might influence them. All of the authorities teach us that "[i]t is generally presumed that a defendant is injured whenever an *impaneled juror* converses with an unauthorized person about a case." *Romo v. State of Texas*, 631 S.W.2d 504, 506 (Tex.Crim.App.1982) (emphasis added).

Without a presumption of injury, we hold that the burden is on the appellant to demonstrate how the comment by Good operated to prejudice appellant's rights. To the contrary, the empaneled jurors all indicated in one way or another that they could render an impartial verdict in the case. Appellant's point of error is overruled.

■ We now address appellant's first point of error which is a complaint that the court erred in allowing the State to present evidence of unadjudicated extraneous offenses during the punishment phase of the trial. The State presented evidence at the punishment phase of the trial that appellant had committed similar, but unadjudicated, offenses. He argues that these offenses were not final convictions and, therefore, could not be used under article 37.07 at the punishment phase of the trial. TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1987).

At the punishment phase of the trial, the State rested and appellant then presented three witnesses in his behalf: his stepmother, his son, and his uncle. All three testified that appellant had never been convicted of a felony. The State thereafter informed the trial court of its intention to introduce unadjudicated extraneous offenses. The court stated that unadjudicated extraneous offenses would be admissible. Counsel for appellant objected to the introduction of unadjudicated "acts of misconduct." Appellant's objections were overruled. The State was thereafter permitted to introduce the testimony of a number of witnesses as to unadjudicated offenses over the objections of appellant.

In presenting the three witnesses who testified only that appellant had never been convicted of a felony, the appellant did not mislead the jury or give a false impression to give the State a reason to introduce such unadjudicated offenses. *See Drew v. State*, 719 S.W.2d 388 (Tex.App.—Houston [1st Dist.] 1986, pet. filed) and *Murphy v. State*, 700 S.W.2d 747 (Tex.App.—Dallas 1985, pet. granted). This was error by the trial court at the punishment stage of the trial. Appellant's first point of error is, therefore, granted.

Since the only error occurred during the punishment stage of the trial, we remand the cause back to the trial court for it to "commence the new trial" in accordance with article 44.29 of the Code of Criminal Procedure. Act of May 26, 1987, ch. 179, § 1(b), 1987 Tex.Sess.Law Serv. 2711, 2711–12 (Vernon) states as follows:

> If the court of appeals or the Court of Criminal Appeals awards a new trial to the defendant only on the basis of an error or errors made in the punishment stage of the trial, the cause shall stand as it would have stood in case the new trial had been granted by the court below, except that the court shall commence the new trial as if a finding of guilt had been returned and proceed to the punishment stage of the trial under Subsection (b), Section 2, Article 37.07, of this code. If the defendant elects, the court shall empanel a jury for the sentencing stage of the trial in the same manner as a jury is empaneled by the court for other trials before the court. At the new trial, the court shall allow both the state and the defendant to introduce evidence to show the circumstances of the offense and other evidence as per-

mitted by Section 3 of Article 37.07 of this code.

The State in its brief interprets article 44.29 to be directed to this court. "The article plainly is directed at the trial court to take appropriate action in appropriate circumstances. The proper forum to urge the application of the article is the *trial* court." *Ex Parte William Klasing,* 738 S.W.2d 648 (Tex.Crim.App.1987) (not yet reported) (emphasis in original).

Therefore, pursuant to *Klasing,* we set aside the judgment of conviction and remand the cause for a new trial.