**Leonard ROLLING, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–85–01064–Cr.**

Court of Appeals of Texas, Dallas.

March 13, 1989.

Rehearing Denied April 17, 1989.

Lawrence B. Mitchell, Dallas, for appellant.

Patricia Poppoff Noble, Dallas, for appellee.

Before McCLUNG, KINKEADE and BURNETT, JJ.

## ON REMAND FROM THE COURT OF CRIMINAL APPEALS

McCLUNG, Justice.

On this remand, the sole issue to be determined is whether the trial court's submission of the unconstitutional good time and parole instructions to the jury contributed to the punishment the jury assessed the appellant. We are unable to determine that the submission of the instructions was harmless beyond a reasonable doubt. We reverse the trial court's judgment and remand the case to the trial court for further proceedings.

Appellant was originally convicted of murder and assessed ninety-nine years and a fine of $2500. On his appeal to this Court, he contended that the trial court erred in submitting good time and parole instructions to the jury on the grounds that the charge was predicated upon an unconstitutional statute and was a violation of due process. In an unpublished opinion, we rejected his challenge to the constitutionality of article 37.07, section 4, of the Texas Code of Criminal procedure. *Rolling v. State*, No. 05–85–01064–CR (Tex. App.—Dallas, Dec. 2, 1986).

In his petition for discretionary review, appellant asserted, as grounds of review, the unconstitutionality of article 37.-07, section 4 of the Texas Code of Criminal Procedure. The Court of Criminal Appeals granted his petition on the constitutional issue and agreed with his contention that the statute in question is unconstitutional. The court based this conclusion on its prior decision in *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1988). That court remanded this cause to this Court to conduct a harmless error analysis under Rule 81(b)(2) of the Texas Rules of Appellate Procedure. *See Rose*, 752 S.W.2d at 554; *Haynie v. State*, 751 S.W.2d 878, 879 (Tex.Crim.App. 1988). Rule 81(b)(2) of the Texas Rules of Appellate Procedure provides the general harmless error test to be applied by appellate courts in criminal cases and states:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

TEX.R.APP.P. 81(b)(2). This standard requires a review of the entire record.

Appellant was convicted of murder. The charge was not enhanced by a prior conviction, therefore the range of punishment was a minimum of five years to a maximum of ninety-nine years or life with the possibility of a fine up to $10,000. The jury assessed ninety-nine years and a fine of $2500.00.

The voir dire of the prospective jurors was not transcribed. The evidence during the guilt/innocence phase of the trial reflected that appellant and another male were at a friend's apartment drinking wine, smoking marijuana, and watching TV. The victim was a door to door salesman of coupons for portrait or family photographs. At around four-thirty to five o'clock on this Sunday afternoon, he knocked on the door of the apartment occupied by appellant and his friend. The owner was not at home at the time. After the victim left, appellant retrieved a shovel handle from under the living room couch, slipped up behind the victim and struck him on the head. While he was on the ground, appellant and his friend took his money from his pockets and returned to the apartment, leaving the victim lying on the ground. The police and ambulance arrived shortly and the victim was transported to the hospital. He died as a result of his injuries a few hours later. The police received a "crime stoppers" tip which resulted in appellant's arrest. Appellant gave a voluntary statement wherein he admitted striking the victim one time with the shovel handle and taking his money.

The State offered no evidence during the punishment phase of the trial. The appellant presented several family members to emphasize appellant's youthful nineteen years, the fact that appellant was the father of a seven month old illegitimate child, a tenth grade drop-out, and came from a broken home. These same witness testified extensively about the appellant's drinking, drug use, poor employment history and behavior problems that had started at a very early age and existed at the time of this incident. The appellant also testified on his own behalf and stated he wanted to clear up the untruths in his statement. Appellant said he did not hit the man one time, but he did hit him on the head at least three times; that he did not actually take the victim's money, but that his friend and accomplice did take it out of the victim's pocket, and then shared it with appellant; that he felt bad about it because he really didn't intend to kill the victim but to just get his money. The trial court charged the jury on probation in addition to the statutory good time and parole charges mandated by article 37.07 of the Texas Code of Criminal Procedure. No additional mitigating charge on good time and parole was requested or submitted to the jury. *See Rose*, 752 S.W.2d at 554. No objection to the charge was made.

During jury argument at the close of the punishment phase, the State told the jury:

> You know what the judge has instructed you in reference to parole. That this defendant, if sentenced to the penitentiary, will have to serve at least one third of

any numerical number of years that you give him, or twenty years, *whichever is most,* before he is eligible for parole. *Consider that when you assess punishment in this case* (emphasis added).

The State made this erroneous summary of the parole law in their opening argument and attributed it to the court's charge, thus, giving this erroneous summary credibility it should not have had. No objection was made to this argument. No answer or response to correct this comment was made by defense counsel in his final argument. No further specific mention of the parole and good time credit instructions was made by the State. The State's argument concentrated on the facts of the offense itself, and repeatedly placed emphasis on the severity while urging the jury to give a life sentence and the maximum fine. During deliberations, the jury sent a note which stated, "Det [sic] Cogden stated that the defendant was in jail for another offense sometime during Feb. Mar. etc, under another name. Can we have this part of the testimony restated." The court responded with the customary response that if the jury was in disagreement as to testimony, that they should set out the specific portion of testimony on which they disagreed. The record is silent as to any further action on this subject. The jury assessed a sentence of the maximum of ninety-nine years and a fine of $2500.00.

The attack which resulted in the death of the victim was without provocation, and done in a violent, brutal manner which would militate to high punishment. It must be noted, however, that no mitigating instruction was included in the court's charge, and no evidence of any prior record was offered. Therefore, this case lacks two of the three important factors found in *Rose,* 752 S.W.2d at 554. Additionally, we have the appellant's young age of nineteen years. We have the State's bold, but erroneous, statement of the parole law which set out the theory of the State's case on punishment of how much time the appellant would be required to serve. And finally, the State specifically told the jury to *"consider that when you assess punishment,"* a manifestly improper argument

that is directly in conflict with the court's charge which instructed the jury they were not to consider parole and good time credit. This was the trial court's last word on the subject. The State's argument constituted a clear invitation to the jury to disregard the court's instructions and provide the jury a reason or rationale to give the maximum sentence which the State was vigorously demanding. *See Everett v. State,* 707 S.W.2d 638 (Tex.Crim.App.1986). We conclude that the error in submitting the statutory mandated, unconstitutional charge did contribute to the punishment assessed in this case.

We reverse and remand the cause for a new trial pursuant to article 44.29 of the Texas Code of Criminal Procedure. *See Ex parte Klasing,* 738 S.W.2d 648, 650–51 (Tex.Crim.App.1987); *Kingsley v. State,* 744 S.W.2d 191, 196 (Tex.App.—Dallas 1987, no pet.).

KINKEADE, J., dissents.

KINKEADE, Justice, dissenting.

I respectfully dissent.

During the trial on guilt or innocence, the State introduced appellant's confession wherein he admitted walking up behind a door-to-door salesman and striking him with a shovel handle and stealing eighteen or nineteen dollars. The medical examiner testified that the victim had bruises on his face, chest, back, waist, thigh, and right thumb. When asked how many times the victim was struck in the head, the medical examiner said several times. The back scalp of the victim's head had two large tears. One tear was two and a quarter inches long and three-eights of an inch wide. The other tear was two inches long and a quarter-inch wide. The victim's skull was fractured; the medical examiner described it as "quite a large crack." The medical examiner stated that the victim's brain was bruised and that in order to bruise the brain, an unusual amount of force would be required. The victim died as a result of injuries to the head and brain. In addition to the blows to the head, the medical examiner counted nine other

areas of bruises on the body, not to mention several other small areas of bruises on the victim's face. The indictment and jury charge on guilt or innocence alleged that appellant killed the victim by striking the victim in the head with a shovel handle. However, during the trial on punishment, appellant admitted striking the victim "[n]o more than two or three" times. Appellant admitted hitting the victim in the back of the head with the shovel handle. Appellant stated that he did not intend to commit murder; rather, he intended "[j]ust to get some money."

The State asked the jury to assess punishment at life imprisonment and to fine appellant $10,000. The jury assessed punishment at ninety-nine years' imprisonment and fined appellant $2,500.

The majority quotes the comment regarding parole made by the State during its opening argument on punishment:

> You know from what the Judge has instructed you in reference to parole. That this Defendant, if sentenced to the penitentiary, will have to serve at least one third of any numerical number of years that you give him, or twenty years, whichever is most,[1] before he is eligible for parole. Consider that when you assess punishment in this case.

Although the majority emphasizes the State's comment, "Consider that when you assess punishment in this case," the statement of facts show that the State itself did not emphasize the parole law. The State made this one comment and devoted the rest of its fifteen minutes of argument to other contentions totally unrelated to parole.

The State opened its argument on punishment by emphasizing that appellant sneaked up behind an innocent man and beat him with a shovel handle over the head enough times and with enough force to crack the victim's skull. The State argued that appellant had no reason "worth a plug nickel" for killing the victim. The

fact that appellant's father left home, that appellant was smoking marijuana before the murder, and that his mother could not afford to send him to a drug treatment center were not good reasons for killing another human being.

At this juncture, the State said the quoted comments regarding parole.

The State then asked the jury to assess punishment at life confinement and to fine appellant $10,000, because of the brutal, violent, and whimsical nature of the murder. The State said that the jury should start at life confinement and, taking into consideration the mitigating circumstances, if any, lower the punishment to ninety-nine years and to continue downward.

At this point, appellant's counsel presented his arguments. Counsel maintained that appellant was not offering any excuses for murder; rather, counsel emphasized that appellant immediately felt remorse and thereby showed that he was not a "cool, cold-blooded, calculating murderer." Counsel said that no amount of prison time would bring the victim back. Counsel stated that appellant made a mistake, but the jury should remember that appellant was only seventeen at the time of the offense. Appellant's youth was "no bed of roses," and there were forces that made appellant weak of mind and weak of character. Counsel argued that this minute of misconduct did not show that there was no hope for appellant. Counsel opined that appellant's remorse was truthful and not necessarily self-serving. Counsel asked the jury to consider probation, given appellant's youth and given appellant's ability to help others, such as his grandmother. Counsel urged the jury to consider rehabilitation as opposed to punishment or retribution as a basis for punishment, because appellant had something left to offer the State of Texas.

The State then closed arguments. The State said that appellant's life was not at stake, only his liberty, and it was the jury

---

**1.** Actually, the parole law charge said that the defendant must serve one-third of his numerical sentence or twenty years, whichever is *less*. Because I would hold that beyond a reasonable

doubt this comment had no bearing on the sentence, the prosecutor's erroneous summary of the parole law is irrelevant.

who would decide how much of appellant's liberty would be taken. The State emphasized that appellant was capable of making choices: appellant dropped out of school, smoked marijuana, drank alcohol, fathered a child, and moved out of his mother's home. The State argued that appellant gave up his membership to the human race by severely beating a fifty-year-old man. The State said that the jury's job was to protect itself and Dallas County. The State asked the jury if they wanted appellant in their community, given the fact that when appellant wants money, he goes after it without any thought or consideration for others.

The State explained why it was seeking a life sentence. The State said that America celebrates human life, yet here was appellant committing "one of the most brutal killings that you are going to find.... [T]his man was bludgeoned to death, his life beaten from him.... What is human life worth to you[?]" The State asked the jury to make a statement for the future. The State concluded:

> I submit to you ladies and gentlemen that this case is as bad as you can get, a life for a death, he can li[v]e, breathe and eat down at TDC, more than what we can say for [the victim]. Protect yourselves, protect your country, I'm asking you to do the hard thing, I'm asking you to do the right thing, life for [appellant] and a ten thousand dollar fine, not ninety-nine years, if those were the same, the Legislature would [not] have made a difference between ninety-nine and life. Thank you for your time and attention.

This summary of the jury arguments on punishment illustrates that the State's theory of punishment was focused on the heinous facts and not on how much time the jury must assess in order to circumvent the parole law.

The majority states that the court's charge contained no mitigating instruction. The majority fails to note that the parole law instruction itself contains a mitigating instruction. The very last sentence of the parole law instruction provides: *"You are not to consider the manner in which the parole law may be applied to this particular defendant."* (Emphasis added.) This mitigating instruction, regardless of whether it is found within or without the unconstitutional parole law instruction, *was before the jury* and correctly told the jury not to consider the parole law.

To require two mitigating instructions before being able to determine beyond a reasonable doubt that the error did not contribute to appellant's punishment is to misread *Rose*. *Rose* stands for the proposition that courts must analyze each case on its own facts. The two mitigating instructions in *Rose* were a unique fact of that case, but *Rose* did not require two mitigating instructions as a prerequisite to an affirmance.

The majority correctly notes that the State's argument was contrary to the jury instruction that told the jury not to consider parole. Therefore, the majority tacitly recognizes that the jury charge contained a mitigating instruction. The majority also correctly notes that the instruction not to consider the parole law was the trial court's last word on the subject. The majority fails to note that courts generally presume that a jury follows the instructions given by the trial judge, *Rose*, 752 S.W.2d at 554, or that *Rose* itself listed the court's last word on parole as "significant." *Id.*

The court in *Rose* held that a defendant need not object to the parole law instruction at trial to preserve error on appeal. *Rose*, 752 S.W.2d at 552–53. The Court in *Rose* did not hold that the unconstitutional parole law instruction relieved the defendant of the duty to object to improper jury argument regarding the parole law. The majority allows appellant to sit idly back while the State not only argues the parole law but also misstates the parole law and, once on appeal, to force a reversal of his conviction on the basis of something appellant found unobjectionable at the trial court. A defendant may not create reversible error by his own manipulations. *Beasley v. State*, 634 S.W.2d 320, 321 (Tex.Crim. App.1982). This rule applies regardless of whether the error is fundamental. *Smith*

*v. State,* 635 S.W.2d 591, 592–93 (Tex.App. —Dallas 1982, no pet.). Appellant could have cured the error in the jury argument by timely asserting an objection and requesting the trial court to instruct the jury to disregard the State's comments. The majority reverses appellant's conviction, not on the basis of the parole law instruction, which is the only issue remanded to this Court, but on the basis of unobjected-to jury argument.

I would hold that beyond a reasonable doubt, the charge on parole law did not contribute to appellant's conviction or punishment. The jury did not assess a ninety-nine-year sentence because of the parole law instruction; rather, the jury assessed a ninety-nine-year sentence because appellant sneaked up behind an unsuspecting door-to-door salesman on a Sunday evening and brutally beat him to death. *After* the jury found appellant guilty, appellant testified to facts that were worse than those alleged in the indictment. In my opinion, it's what appellant, not the prosecutor, said that caused the jury to assess a ninety-nine year sentence and $2,500 fine. In my opinion, beyond a reasonable doubt, the jury decided that appellant did not deserve leniency, that appellant did not deserve a second chance, and that they simply did not want appellant loose on the streets. I would affirm the judgment of the trial court.